**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **CRAIG SANDERS #N-33346,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) No. 10 C 7203 |
| | ) |
| **SGT. SALEMI, OFFICER MARZEC,** | ) Judge Rebecca R. Pallmeyer |
| **3-11 Shift, OFFICER DAVIS, 11-7 Shift,** | ) |
| **OFFICER PERRY, 3-11 Shift, and** | ) |
| **OFFICER McLAND, 11-7 Shift,** | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Craig Sanders, an inmate at the East Moline Correctional Center, filed this civil rights action against officers at the Cook County Jail, where Sanders was detained pre-trial. In his second amended complaint, Plaintiff alleges that Defendants denied him meals on three occasions, refused to deliver his mail to him, and retaliated against him when he attempted to complaint. (Second Am. Compl. at 5-6.) Defendants have moved to dismiss, arguing that neither missing two to three non-consecutive meals nor being denied mail on two or three occasions rises to the level of a constitutional violation and that, at most, Plaintiff alleges retaliation based merely on unprotected threats to file grievances. For the reasons that follow, the motion is granted.

## FACTUAL BACKGROUND

Plaintiff's problems began on August 31, 2010, when, during Ramadan, Officer Davis refused to give Plaintiff his breakfast because Plaintiff had not signed a breakfast confirmation slip. (Second Am. Compl. at 5.) Plaintiff asked to speak to a sergeant, ostensibly in order to make a complaint, but instead Davis wrote Plaintiff a disciplinary ticket. (*Id.*) Then, on September 3, 2010, Officer McLeland denied Plaintiff his breakfast because, once more, he had not signed a breakfast confirmation slip. (*Id.*) On September 17, 2010, after Plaintiff had received three lunch bags, Officer Perry refused to deliver a dinner tray to Plaintiff. (*Id.* at 5-6; Internal Affairs/Inspector

General Complaint Register, Ex. to Second Am. Compl., at 27-28.)  When Plaintiff asked to speak to a sergeant, Perry disciplined Plaintiff by sending him to "the hole," *i.e.*, to segregation.  (Second Am. Compl. at 6.)  As Plaintiff was headed to segregation, Sergeant Salemi instructed Officer Perry to return Plaintiff's mail to the mail room, and Perry complied.  (*Id.*)  Plaintiff did not receive his mail on November 7, 2010, or November 8, 2010, either.  (*Id.*)

Also on November 7 and 8, 2010, Plaintiff filed grievances against Officer Perry.  On November 7, 2010, Plaintiff complained that Perry was harassing him and that she stuck up her middle finger at him.  (Nov. 7, 2010 C.C.D.O.C. Detainee Grievance Form, Ex. to Second Am. Compl., at 10.)  On November 8, 2010, Plaintiff again complained that Perry was harassing him.  (Nov. 8, 2010 C.C.D.O.C. Detainee Grievance Form, Ex. to Second Am. Compl., at 11.)  Plaintiff also contends that Perry directed another inmate to "fabricate[] a statement" against Plaintiff, although the nature of the alleged lie is unclear.  (Second Am. Compl. at 6, 7.)

## **DISCUSSION**

When considering a motion to dismiss, a court assumes all of the well-pleaded allegations in the complaint to be true, *Erickson v. Pardus*, 551 U.S. 89, 93 (2007), and construes all reasonable inferences from those facts in the light most favorable to the plaintiff.  *Pisciotta v. Old Nat'l Bancorp,* 499 F.3d 629, 633 (7th Cir. 2007).  A complaint must include "a short and plain statement of the claim showing the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  In other words, the complaint need only provide each defendant with sufficient notice of the claim and the grounds upon which it rests.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Still, the complaint must plausibly suggest that the plaintiff has a right to relief and raise that possibility above a "speculative level."  *Id*; *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

Plaintiff alleges a deprivation of his constitutional rights in violation of 42 U.S.C. § 1983. "[T]o state a § 1983 claim, a plaintiff must sufficiently allege that: (1) a person acting under color of state law (2) deprived [him] of a right, privilege, or immunity secured by the United States

2

Constitution or laws[.]" *Jackson v. Indian Prairie School Dist. 204*, 653 F.3d 647, 653 (7th Cir. 2011) (citing *London v. RBS Citizens, N.A.*, 600 F.3d 742, 745-46 (7th Cir. 2010)). Defendants argue that, even assuming the truth of Plaintiff's allegations, he has not stated a constitutional deprivation and therefore he is not entitled to any relief. Defendants contend that there is no constitutional violation where a prisoner misses two to three non-consecutive meals or does not receive mail on two to three occasions. Further, Defendants assert, Plaintiff fails to state a valid retaliation claim because a threat to file a grievance is not protected activity.

**A.     Missed Meals**

The Constitution requires that inmates be detained in humane conditions, which includes providing them with adequate nourishment. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)[1]; *Sain v. Wood*, 512 F.3d 886, 893 (7th Cir. 2008). Inmates must be provided "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." *French v. Owens*, 777 F.2d 1250, 1255 (7th Cir. 1985) (quoting *Ramos v. Lamm*, 629 F.2d 559, 571 (10th Cir. 1980)). But "the occasional missed meal does not rise to the level of a constitutional violation." *Curiel v. Stigler*, No. 06 C 6880, 2008 WL 904894, at *5 (N.D. Ill. Mar. 31, 2008); *cf. Reed v. McBride*, 178 F.3d 849 (7th Cir. 1999) (claim that the prisoner was repeatedly denied food for three to five days at a time survives summary judgment).

Plaintiff alleges three non-consecutive missed meals, and at least two of those were by his own design. On August 31, 2010, and on September 3, 2010, Plaintiff did not receive a breakfast

---

[1]     In *Farmer*, the analysis concerning the humane treatment of convicted prisoners falls under the Eighth Amendment's prohibition against "cruel and unusual punishment." U.S. Const. amend. VIII. Pre-trial detainees like Plaintiff, by contrast, are guaranteed humane treatment by the Due Process Clause of the Fourteenth Amendment; the analyses, however, are "'frequently consider[ed] [] to be analogous." *Guzman v. Sheahan*, 495 F.3d 852, 856 (7th Cir. 2007) (alteration in original) (quoting *Washington v. LaPorte Cnty. Sheriff's Dep't*, 306 F.3d 515, 517 (7th Cir. 2002)).

tray because, as he admits, he "did not sign the list," *i.e.*, the breakfast confirmation slip.[2] (Second. Am. Compl. at 5.) Plaintiff does not challenge the validity of the rule requiring a prisoner to sign a breakfast slip in order to receive breakfast. As the Seventh Circuit has noted, "deliberate noncompliance with a valid rule does not convert the consequences that flow automatically from that noncompliance into punishment." *Rodriguez v. Briley*, 403 F.3d 952, 952-53 (7th Cir. 2005) (rejecting a prisoner's claim of inhumane treatment in violation of the Eighth Amendment where his refusal to stow his personal items upon exiting his cell resulted in denial of over three hundred meals over the course of eighteen months). Defendants also denied Plaintiff dinner on September 17, 2010, because, as he states, he had collected three lunch bags earlier that day (Second Am. Compl. at 5-6), an act that may well have constituted the reason for the officers' decision to withhold a subsequent meal. Regardless, even if all three missed meals were not of Plaintiff's own doing, the denial of three meals over a three-week period does not "present an immediate danger to the health and well being of the [Plaintiff]." Therefore, this claim simply does not rise to the level of a constitutional violation and must be dismissed.

**B. Denial of Mail**

Plaintiff alleges he was deprived of his "legal mail" on three occasions. Inmates and detainees generally have a protected First Amendment interest in both sending and receiving mail. *Van den Bosch v. Raemisch*, 658 F.3d 778, 785 (7th Cir. 2011). When the mail relates to legal proceedings, the protection is even greater because of the concern that denial of legal mail risks interference with the prisoner's access to the courts. *Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999). In order to demonstrate that the prisoner's access to the courts has been compromised,

---

[2] On initial review, the court understood Plaintiff to allege that Defendants refused him breakfast during the month of Ramadan. Upon a closer reading of the second amended complaint, however, the court understands that Plaintiff claims Defendants caused him to miss only three, non-consecutive meals, not because of any religious discrimination, but because on two occasions he "did not sign the list" and, on another, he had already received three lunch bags that day. (Second Am. Compl. at 5-6.)

however, a detainee must demonstrate prejudice, *i.e.*, that the defendant's mishandling of mail frustrated or impeded the plaintiff's non-frivolous legal claim. *Marshall v. Knight*, 445 F.3d 965, 968 (7th Cir. 2006); *Lehn v. Holmes*, 364 F.3d 862, 868 (7th Cir. 2004).

Although Plaintiff repeatedly refers to the denial of his "legal mail," he does not specify whether this term refers to correspondence concerning a pending legal matter or simply mail Plaintiff believes he is legally entitled to receive. (*See, e.g.*, Second Am. Compl. at 6.) Plaintiff does not describe the contents of the mail in any specific terms, nor does he make any allegation that his access to the courts was affected by the denial, short-term or otherwise, of his mail. (Second Am. Compl. at 6.) He states simply that on September 17, 2010, Officer Perry, obeying an order from Sergeant Salemi, returned Plaintiff's mail to the mail room instead of delivering it, and that he was also denied his mail on November 7 and 8, 2010. (Id.) "[T]he occasional interference with a detainee's mail does not rise to the level of a constitutional violation, and a plaintiff must demonstrate a systematic pattern or practice with interfering with the detainee's mail." *Lieberman v. Budz*, No. 03 C 2009, 2009 WL 1437609, at *12 (N.D. Ill. May 20, 2009) (citing *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000) ("sporadic and short-term delays in receiving mail" do not constitute a First Amendment violation). Plaintiff alleges only three instances in which Defendants denied him his mail. He has not suggested that he was the victim of a "systematic pattern" of interference, nor that he was denied mail specifically related to a legal matter which resulted in actual frustration of a potentially meritorious legal claim. Accordingly, this claim must be dismissed.

**C.     Retaliation**

To establish a claim of retaliation, a plaintiff must demonstrate that he engaged in protected activity which was "'at least a motivating factor'" in the defendants' retaliatory conduct. *Mays v. Springborn*, 575 F.3d 643, 650 (7th Cir. 2009) (quoting *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). A prisoner may state a prima facie case for retaliation by alleging "a chronology of events from which retaliation may be inferred." *Marshall*, 445 F.3d at 971. "Conduct that does not

5

independently violate the Constitution can form the basis for a retaliation claim, if that conduct is done with an improper, retaliatory motive." *Hoskins v. Lenear*, 395 F.3d 372, 375 (7th Cir. 2005).

Here, Plaintiff's retaliation claim appears to rest primarily on two incidents. The first incident occurred on August 31, 2010, when Plaintiff did not receive a breakfast tray and asked to speak with a sergeant; Officer Davis promptly "wrote [Plaintiff] a ticket." (Second Am. Compl. at 5.) The second incident took place on September 17, 2010, when Plaintiff again asked to speak with a sergeant because he did not receive a dinner tray, and "Officer Perry had [him] sent to the hole." (*Id.* at 6.) Plaintiff states that he filed grievances after both incidents, but those grievances do not seem to be the basis for any retaliation claim Plaintiff makes. Rather, Plaintiff alleges that the officers retaliated because he asked to speak with one of their supervisors. He admits as much in his response to the motion to dismiss: "The retaliation claim is based on the causal connection – If Plaintiff HAD NOT asked for a 'white shirt', he would have not been issued a ticket." (Pl.'s Mot. to Dismiss Defs.' Mot. to Dismiss [34] at ¶ 9.) (emphasis in original). Plaintiff explains that he was not even threatening to file a grievance, "but was trying to end the dispute with the defendants by asking for a 'white shirt.'" (*Id.* at ¶ 10.) Plaintiff presumably contends, therefore, that his request for a sergeant constituted a protected activity which, at least in part, motivated Officers Davis and Perry to retaliate against him. (*Id.*)

Regardless of whether the officers' conduct was appropriate and in compliance with prison policy, the facts Plaintiff has alleged simply do not give rise to a retaliation claim. Plaintiff himself insists that his request to speak with a prison officer was not a threat to file a grievance. And even construing it as such, Plaintiff has not alleged constitutionally protected activity. The Seventh Circuit has stated that "it seems implausible that a *threat* to file a grievance would itself constitute a First Amendment-protected grievance." *Bridges v. Gilbert*, 557 F.3d 541, 554-55 (7th Cir. 2009) (emphasis in original). Plaintiff's request for a sergeant, whether to resolve a dispute or complain about the officers' conduct, is not shielded by the Constitution.

Plaintiff also asserts a retaliation claim based on his filing of a § 1983 action. In his complaint, Plaintiff states that "Officer Perry is punishing [him] for filing [his] [§] 1983 claim which is [] protected conduct . . . . " (Second Am. Compl. at 6.) Plaintiff is correct that filing a § 1983 suit constitutes protected activity. In general, prisoners have a First Amendment right to seek redress of a grievance by filing a complaint or a lawsuit. *Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002); *Babcock v. White*, 102 F.3d 267, 274-75 (7th Cir. 1996). But Plaintiff filed his § 1983 suit on November 8, 2010—almost two months after the last act Plaintiff specifically described as retaliatory. Clearly, Plaintiff cannot claim retaliation based on protected conduct that he had not yet engaged in.

To the extent that Plaintiff alleges retaliation *after* the filing of his § 1983 complaint, that claim also fails. In his second amended complaint, filed on January 11, 2011, Plaintiff describes other conduct by Officer Perry that he appears to believe was retaliatory and that was not included in the original complaint filed on November 8, 2010. He states that Officer Perry has harassed him, such as when she raised her middle finger and "displayed her tongue [] menacingly" at him or when she told him she was going to "get him" regardless of what the captain said. (Second Am. Compl. at 7.) Plaintiff also contends that Officer Perry directed an inmate (or perhaps two) to fabricate statements that they were witnesses (witnesses to what, exactly, is unclear). (*Id.* at 6.) Yet Plaintiff also states that he complained about this conduct in grievances he filed on November 7 and 8, 2010 (*id.* at 6-7), leading the court to conclude that these acts by Officer Perry also occurred before Plaintiff filed his § 1983 claim on November 8, 2010.

Plaintiff did attach to his complaint a grievance he filed on December 22, 2010, but it does not contain any additional allegations against Officer Perry. Regardless when Officer Perry's harassing behavior took place, and regardless whether Plaintiff properly exhausted administrative remedies with respect to that conduct, Plaintiff's retaliation claim would still fail. To prevail in a retaliation claim based on his right to petition the government for redress of grievance, Plaintiff must

show not only that his "protected activity" was a motivating factor in Defendants' retaliatory conduct, but also that he suffered a deprivation likely to deter future First Amendment expression. *Bridges*, 557 F.3d at 553. Not all retaliatory harassment will have such a deterrent effect. Indeed, "[i]t would trivialize the First Amendment to hold that harassment for exercising the right of free speech was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise." *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982). Here, while it may be bothersome, the harassment that occurred after the filing of Plaintiff's suit is not enough to deter a person "of ordinary firmness" from future exercise of First Amendment rights. *Id.* at 555. Therefore, Plaintiff's retaliation claim must also be dismissed.

## CONCLUSION

For the aforementioned reasons, the court grants Defendants' Motion to Dismiss [27]. The court here has construed Plaintiff's Motion to Dismiss Defendants' Motion to Dismiss [34] as his response to Defendants' Motion to Dismiss, but to the extent Plaintiff disputes that characterization, his motion is denied. The court dismisses the case with prejudice.

ENTER:

Dated: February 1, 2012

_____
REBECCA R. PALLMEYER
United States District Judge